**FOR PUBLICATION**

CLOSED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| | : | |
| SAUDI BASIC INDUSTRIES CORPORATION, | : | **OPINION** |
| Individually and in the Name of, and on Behalf of, | : | Civil Action No. 98-4897 (WHW) |
| AL-JUBAIL PETROCHEMICAL COMPANY, | : | |
| a Partnership, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EXXONMOBIL CORPORATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

**Walls, District Judge**

Defendant Exxon Mobil Corporation ("ExxonMobil") moves to dismiss Plaintiff's Amended Complaint based on the unclean hands doctrine. The Court heard oral arguments on the motion on May 10, 2005. Because Plaintiff then had a pending petition for certiorari to the United States Supreme Court arising from an adverse Delaware judgment involving the parties, this Court deferred ruling on the motion until the Supreme Court determined its petition. The Supreme Court denied the petition and this Court now decides the motion. Defendant's motion to dismiss the Amended Complaint is granted.

### FACTS AND PROCEDURAL BACKGROUND

As the facts and procedural posture of this case are in this Court's earlier opinion at <u>Saudi Basic Indus. Corp. v. ExxonMobil Corp.</u>, 194 F. Supp. 2d 378 (D.N.J. 2002), they need not be

-1-

**FOR PUBLICATION**

recited at length again.  In brief, this matter involves two lawsuits which were consolidated in

2002.  In the first, "NJ-I," Saudi Basic Industries Corporation ("SABIC") is suing on behalf of

KEMYA, a joint venture between SABIC and Exxon Chemical Arabia, Inc. ("ECAI"), a

subsidiary of defendant ExxonMobil.  This suit is for breach of a Service Agreement and implied

covenants, specific performance, misappropriation of trade secrets, conversion, tortious

interference with prospective economic advantage, unfair competition, and unjust enrichment.  In

the second suit, "NJ-II," plaintiffs ExxonMobil, ECAI, and Mobil-Yanbu (another entity that

entered into a partnership with SABIC) claim that SABIC overcharged the partnerships by

collecting royalties at higher rate than agreed.  ExxonMobil previously moved to consolidate NJ-

I and NJ-II, and the Court granted the motion.  Id. at 415-416.  In addition to the lawsuits filed in

this district, SABIC also filed a complaint in the Superior Court of Delaware seeking declaratory

relief against Mobil-Yanbu and ECAI on whether the royalty charges were proper.

Since 2002, the Delaware action has been adjudicated with a jury verdict rendered in

favor of ExxonMobil.  Specifically, the jury found that SABIC was liable for usurpation.  The

Delaware Superior Court gave the following jury instruction with regard to the usurpation claim:

"In order to establish a claim for usurpation, Mobil or Exxon must show, by a preponderance of

the evidence, that SABIC wrongfully exercised ownership or possessory rights over the property

of another without consent, which means with blatant or reckless disregard for those property

rights.  The conduct need not be intentional."  (Singer Decl. at Ex. 9, 4.4).  On March 21, 2003,

the Delaware Superior Court entered a judgment against SABIC in the amount of $416,880,764.

On May 16, 2003, ExxonMobil moved to dismiss the Amended Complaint on the basis of

**FOR PUBLICATION**

the unclean hands doctrine.  The Court heard oral arguments on the matter on June 23, 2003 and

decided to stay the action pending the outcome of SABIC's appeal of the verdict against it.  On

January 14, 2005, the Delaware Supreme Court affirmed the judgment against SABIC.  SABIC

filed a motion for reargument which the Delaware Supreme Court denied on February 22, 2005.

On January 21, 2005, ExxonMobil promptly renewed its motion to dismiss the Amended

Complaint in light of the Delaware Supreme Court's decision.  On May 10, 2005, this Court

heard oral argument on ExxonMobil's motion but refrained from ruling on the matter as SABIC

confirmed its intention to petition the United States Supreme Court for a writ of certiorari

appealing the Delaware judgment.  Certiorari has been denied.  Saudi Basic Indus. Corp. v.

Mobil Yanbu Petrochem. Co., ---U.S.---, 2005 WL 2493908 (Oct. 11, 2005).[1]

## DISCUSSION

The issue before the Court is whether the usurpation found in the Delaware action renders

SABIC's hands unclean in equity.  The doctrine of unclean hands will deny equitable relief

"when the party seeking relief is guilty of fraud, unconscionable conduct, or bad faith directly

related to the matter at issue that injures the other party and affects the balance of equities."

Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 147 n.12 (3d Cir. 1999).

As an initial matter, the Court must determine whether collateral estoppel applies to the

issues decided in the Delaware action.  Under the doctrine of collateral estoppel or issue

preclusion, "once an issue is actually and necessarily determined by a court of competent

---

[1] The parties have since submitted unsolicited letter briefs in response to the denial of certiorari.  The Court does not rely on the arguments presented in those letters in reaching its decision.

**FOR PUBLICATION**

jurisdiction, that determination is conclusive in subsequent suits based on a different cause of

action involving a party to the prior litigation." Hercules Inc. v. AIU Ins. Co., 783 A.2d 1275,

1278 (Del. 2000) (citing Montana v. United States, 440 U.S. 147, 153 (1979)). In Delaware, the

elements of collateral estoppel are:

> (1)   the issue previously decided is identical with the one presented in the
>        action in question;
> (2)   the prior action has been finally adjudicated on the merits;
> (3)   the party against whom the doctrine is invoked was a party or in privity
>        with a party to the prior adjudication; and
> (4)   the party against whom the doctrine is raised had a full and fair
>        opportunity to litigate the issue in the prior action.

Betts v. Townsends, Inc., 765 A.2d 531, 535 (Del. 2000).  Delaware law controls whether and to

what extent the Delaware judgment has preclusive effect in the matter before the Court.  See

Grimes v. Vitalink Comm. Corp., 17 F.3d 1553, 1563 (3d Cir. 1994).

    At this point, the Delaware action has been fully adjudicated on the merits.  That SABIC

was a party to the Delaware action and had "a full and fair opportunity to litigate" the royalty

issue before that court satisfies the last two elements.  The Court must determine whether the

Delaware court's finding that SABIC acted with blatant or reckless disregard of ExxonMobil's

property rights amounts to unclean hands in NJ-I.

    In its April 3, 2002 opinion, this Court said that the royalty overcharges were "directly

relevant" to SABIC's allegations in NJ-I and that "this alleged conduct by SABIC *could* be

considered unconscionable conduct that permeates the transaction as a whole." Saudi Basic

Indus. Corp., 194 F. Supp. 2d at 392 (emphasis added).  Now that there has been a final

adjudication of the Delaware litigation in ExxonMobil's favor, the Court must decide whether

**FOR PUBLICATION**

the Delaware verdict conclusively demonstrates that SABIC's conduct was unconscionable:

ExxonMobil says yes; SABIC says no.  SABIC raises four arguments as to why its Amended

Complaint should not be dismissed.

## I.      Purging Unclean Hands

SABIC first claims that because it has paid the judgment in the Delaware litigation, it has

purged itself of its unclean hands, meaning that it can now seek equitable relief in this Court.

SABIC advances several cases and treatises for the proposition that a person's right to relief can

be restored if a person guilty of wrongful conduct purges himself of his wrong.  See Wedgewood

Community Ass'n v. Nash, 781 N.E.2d 1172, 1179 (Ind. Ct. App. 2003), clarified on rehearing,

789 N.E.2d 495 (Ind. Ct. App. 2003) ("Indiana recognizes the ability of a party to purge itself of

wrongdoing, which restores that party's right to seek equitable relief.");  Beavers v. Walters, 537

N.W.2d 647, 650-51 (N.D. 1995) ("One who purges himself of his wrongdoing will have his

right to relief restored."); Hlista v. Altevogt, 210 A.2d 153, 156 (Md. 1965) ("[An] impropriety

which has been purged is not, under the [unclean hands] maxim, fatal to plaintiff's suit."); Sixty-

Third & Halsted State Savings Bank v. Martin, 38 N.E.2d 989, 992-93 (Ill. App. Ct. 1942)

(holding unclean hands purged by payment of a judgment); General Electric Co. v. Klein, 129

A.2d 250, 252 (Del. Ch. 1956) ("The repentant sinner, especially where he has been duly

punished, is not unwelcome in equity."); 27A Am. Jur. 2d, *Equity* § 135 (2004) ("If a person

guilty of unconscionable or wrongful conduct purges himself or herself by adequate and effective

renunciation and repudiation, the right to relief will be restored."); 2 J. Pomeroy, Equity

Jurisprudence § 399 (5th ed. 1941) ("A wrong which has been righted may not be pleaded

<u>**FOR PUBLICATION**</u>

against a party to a suit in equity, on the theory that the party charged therewith is in court with 'unclean hands.' Therefore, one who has asserted the wrongful nature of an act, and recovered from the perpetrator damages in a court of law, cannot, under the principle of this maxim, set up the wrong in a suit in equity arising out of the transaction in connection with which the wrong was committed.").

ExxonMobil counters SABIC's purging argument by contending that the Court must evaluate SABIC's unclean hands as of the time SABIC first sought equitable relief, when this action was filed. ExxonMobil advances several cases to support its point. In <u>Nakahara v. NS 1991 American Trust</u>, 718 A.2d 518, 519 (Del. Ch. 1998), the issue before the chancellor was whether it "should permit a party to avoid the impact of their inequitable conduct by attempting to undo that conduct after an adverse verdict." The court denied the plaintiffs' Rule 60(b) motion and held that the plaintiffs, who were previously denied equitable relief due to their own unclean hands, did not successfully purge the taint of their inequitable actions. <u>Id.</u> In <u>Nakahara</u>, the plaintiffs were trustees who were seeking an advancement of litigation expenses from the trust in connection with defending another litigation. The court originally denied the plaintiffs their relief because it found that the plaintiffs had unclean hands by withdrawing from the trust monies they sought as advances for litigation expenses in violation of a standstill agreement. <u>Id.</u> at 519-20. After the court denied the plaintiffs' request for relief on the ground of unclean hands, about one month later, the plaintiffs, on their own accord, returned the money they had withdrawn. On the basis of that action alone, the plaintiffs moved for relief from the prior judgment. The court rejected this argument and reasoned:

-6-

**FOR PUBLICATION**

> Any acts done by Plaintiffs after judgment do not change the fact that their conduct was inequitable--thereby dirtying their hands--at the time this case was originally under consideration.  In other words, the new facts here do not change the old facts.  Plaintiffs still acted in bad faith, "underhanded[ly]," in a manner "deserving condemnation," "wrongfully, without permission, and surreptitiously" with an aim at subverting the judicial process when they first sought relief from a court of equity.  Regardless of their later actions, Plaintiffs nonetheless came to this Court with unclean hands and remained in front of the Court with unclean hands even after final judgment.  While Plaintiffs' action of giving the money back might be considered extraordinary in a colloquial sense, as it does not change the way I view their original transgressions it does not fall within the ambit of Rule 60(b)(6).

Id. at 521 (footnotes omitted).  The Nakahara chancellor specifically notes, however, that his holding is limited to the facts before him:  "I specifically reserve judgment on the question whether, under Delaware law, a party may purge the taint of unclean hands prior to the entering of an adverse final judgment."  Id. at 524 n.42.

ExxonMobil also advances Alaska Packers' Ass'n v. Alaska Imp. Co., 60 F. 103, 105 (C.C. Cal. 1894), to support the point that equity measures unclean hands at the time when the lawsuit is filed.  There, the suit was brought by the Alaska Packers' Association against the Alaska Improvement Company for infringement of a trademark.  The plaintiff was the assignee of the Aleutian Islands Fishing & Mining Company, which had established a station for canning salmon and other fish on the island of Kodiak, Alaska.  The label that was the subject of the action and used by the plaintiff contained the following statement:  "Packed at Karluk, Kodiak Island, Alaska, by the Aleutian Islands Fishing & Mining Company, San Francisco, California." The defendant argued that the statement was false, and that the plaintiff was therefore not entitled to relief in equity.  Id. at 104.  To correct the misstatement of the label, the plaintiff, after the action was begun, attached a circular label to the can's top, reading that the salmon was packed

-7-

**FOR PUBLICATION**

by it as assignee of the Aleutian Islands Fishing & Mining Company.  The court said "I do not think this cures the defect of the original label.  It is the facts which existed before the suit was brought which make the cause of action, and entitle to relief."  Id. at 105.

The final case cited by ExxonMobil in support of its position is Magic Foam Sales Corp. v. Mystic Foam Corp., 98 N.E.2d 439, 440 (Ohio Com. Pl. 1950).  The Magic Foam plaintiff claimed that the defendant had infringed on its "Magic Foam" trademark.  After trial, the defendant moved for judgment on the ground of unclean hands.  The issue was that the expression "patent pending" had been printed on the plaintiff's product labels since the inception of the 'Magic Foam' business in 1932 despite the fact that no patent had ever been applied for. Id.  The court also found that the label contained other expressions that were not true, such as that the carpet cleaner restored natural oils, would not burn, exterminated and protected against moths, killed germs, and did not harm the hands.  Id. at 441.  The plaintiff claimed that it had purged itself of unclean hands with respect to some of the falsehoods by printing a new label for its product.  Id. at 443.  The court rejected this argument:

> Plaintiff herein claims that it had purged itself of unclean hands in respect to Items No. 2, No. 4, and No. 5 by the printing of a new label, Plaintiff's Exhibit 136.  The evidence is clear, however, that at the time this action was commenced labels exemplified by Defendant's Exhibits 24 and 25 were in use, and the law seems well established that courts of equity in considering the question of plaintiffs coming into court with unclean hands are guided by the state of the matter at the time suit is commenced.

Id.  Additional support for ExxonMobil's position is found in 30A C.J.S. Equity § 111 (2005), which states that "with respect to antecedent conduct it is as of the date of the filing of the bill of complaint, or on the conditions existing at the time when the party applies for equitable relief,

-8-

<u>**FOR PUBLICATION**</u>

that such party's conduct is usually appraised."

While the doctrine of unclean hands is not an issue frequently raised before this Court, it is even more rare for courts to consider whether unclean hands can be purged. Though SABIC maintains that it has purged itself of its unclean hands by paying the judgment against it, it is the caselaw advanced by SABIC itself that convinces this Court otherwise. SABIC has referenced cases that refer to the party purging its unclean hands as the "repentant sinner" and define purging as "renunciation and repudiation." Yet SABIC has not exhibited any of these qualities. SABIC not only appealed the recent verdict to the Delaware Supreme Court and, after affirmance, moved for reconsideration of that decision affirming the judgment, but sought to escape that state judgment by seeking the federal jurisdiction of our highest court, the United States Supreme Court. While in one sense SABIC appears to be walking the righteous path by paying the judgment entered against it in the Delaware litigation, at the same time SABIC unabashedly told this Court that it intended to appeal the judgment to the United States Supreme Court by petitioning for a writ of certiorari. While the Supreme Court has since denied certiorari, that does not change the circumstance that SABIC stood before this Court and asked it to find that it had purged its sins when in fact it was still arguing that it had not sinned at all. These do not appear to be the acts of a repentant sinner. To this Court there has not been a Damascene epiphany. At least not in the eyes of a court of equity. As the United States Supreme Court has written, the doctrine of unclean hands "is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be 'the abetter of iniquity.'" <u>Precision Instrument Mfg. Co. v.</u>

**FOR PUBLICATION**

Automotive Maintenance Machinery Co., 324 U.S. 806, 814 (1945).  Had SABIC paid the

judgment against it and not further challenged that judgment, the Court would be faced with

different facts that might warrant a different result.  Under these circumstances, however,

rewarding SABIC for paying the judgment would render this Court an "abetter of iniquity."

**II.     ExxonMobil Should be Judicially Estopped**

SABIC's next argument is that because ExxonMobil argued successfully in a motion in

limine to the trial court in the Delaware litigation that the claims asserted in the New Jersey cases

are unrelated to the royalty overcharge issue, ExxonMobil should be precluded from arguing that

such claims are directly related as is required for the doctrine of unclean hands to apply.  The

motion in limine sought to exclude any evidence or mention of the claims pending in the cases

before this Court.  Notably, SABIC did not object to the motion.  But SABIC now argues that

ExxonMobil should be judicially estopped from claiming that the allegations regarding the

unclean hands defense are related to the subject matter of SABIC's Amended Complaint.

The doctrine of judicial estoppel is that "where a party assumes a certain position in a

legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply

because his interests have changed, assume a contrary position, especially if it be to the prejudice

of the party who has acquiesced in the position formerly taken by him."  New Hampshire v.

Maine, 532 U.S. 742, 749 (2001) (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)).  This

rule "generally prevents a party from prevailing in one phase of a case on an argument and then

relying on a contradictory argument to prevail in another phase."  Id. (quoting Pegram v.

Herdrich, 530 U.S. 211, 227 n.8 (2000)).  In the words of the Third Circuit, judicial estoppel

**FOR PUBLICATION**

"seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding."  In re Chambers Development Co., Inc., 148 F.3d 214, 229 (3d Cir. 1998).  "It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from playing fast and loose with the courts."  Id.  Moreover, invocation of the doctrine is within a  court's discretion.  New Hampshire v. Maine, 532 U.S. at 750.

Judicial estoppel may be imposed only if:  "(1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity."  Montrose Medical Group Participating Savings Plan v. Bulger, 243 F.3d 773, 777-78 (3d Cir. 2001).

ExxonMobil maintains that judicial estoppel is not applicable here because it never adopted an inconsistent position but rather reiterated SABIC's perspective on the matter.  ExxonMobil also argues that SABIC's allegations here were not relevant to SABIC's defense against the counterclaims asserted in the Delaware action.

As to ExxonMobil's statements in the Delaware action, the motion in limine to prohibit testimony or argument about the New Jersey litigation read in relevant part:

> SABIC's claims in the New Jersey action primarily relate to ownership of a patent and the obligations of an ExxonMobil subsidiary pursuant to a Service Agreement.  According to SABIC, its New Jersey claims are unrelated to the claims at issue in this action.  Under Delaware law, evidence which is not relevant should be excluded.  Here, as SABIC itself has argued, any evidence regarding SABIC's affirmative claims in the New Jersey action is not probative of any fact

-11-

**FOR PUBLICATION**

> issue in the current suit.  As such, the Court should preclude SABIC from introducing any evidence concerning its claims in the New Jersey action in this case.  For the same reasons, the Court should also prohibit SABIC's counsel from making any argument relating to the New Jersey action, or even mentioning the New Jersey action, at trial.

(Singer Decl. at Ex. 7, p.12).   The United States Supreme Court has said that for judicial estoppel to apply, "a party's later position must be 'clearly inconsistent' with its earlier position." New Hampshire v. Maine, 532 U.S. at 750 (citing United States v. Hook, 195 F.3d 299, 306 (7th Cir. 1999); In re Coastal Plains, Inc., 179 F.3d 197, 206 (5th Cir. 1999); Hossaini v. Western Mo. Medical Center, 140 F.3d 1140, 1143 (8th Cir. 1998); Maharaj v. Bankamerica Corp., 128 F.3d 94, 98 (2d Cir. 1997)).

Based on the language used in the motion in limine, the Court cannot say that ExxonMobil adopted a position that is "clearly inconsistent" with its position that the overcharge allegations are directly related to SABIC's claims against ExxonMobil.  In the Delaware action, ExxonMobil moved to exclude "any evidence regarding SABIC's affirmative claims in the New Jersey action" because "it is not probative of any fact issue in the current suit."  Probative is defined as "[t]ending to prove or disprove."  Black's Law Dictionary 979 (7th ed. 2000).  That claims are related does not mean that the evidence that is probative of one claim is necessarily probative of the other.  Absent a clearly inconsistent position, the Court, in its discretion, refuses to judicially estop ExxonMobil from raising the unclean hands defense.

**III.     Establishing the Unclean Hands Defense**

SABIC next argues that ExxonMobil's unclean hands defense fails whether Saudi Arabian or Third Circuit law applies.  SABIC maintains that because this Court has already held

-12-

**FOR PUBLICATION**

that the agreements at issue are governed by Saudi law, Saudi law applies and unclean hands is not recognized under Saudi law.  SABIC alternatively contends that, even if Third Circuit law does apply, the elements of unclean hands have not been established by the Delaware judgment. These arguments are now addressed.

*1.      Saudi Law*

SABIC advances two cases to support its position that Saudi law should be applied to ExxonMobil's unclean hands defense.  In General Development Corp. v. Binstein, 743 F. Supp. 1115, 1134 n.4 (D.N.J. 1990), the court applied the unclean hands doctrine as it existed under the state law governing the plaintiff's claims.  Though the action was adjudicated in federal court, the Binstein court noted that it applied the state law governing the plaintiff's equitable claims to the defendants' unclean hands defense.  Id.  SABIC also relies on Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1234 (3d Cir. 1995), where the Third Circuit addressed whether the amount of a non-pecuniary damages award was correct under Indian law.  The court said that the plaintiff was "entitled to an award of non-pecuniary damages, but she was not entitled to an award comparable to what a similarly situated American would receive in this country.  Rather, the district court should have sought to award an amount comparable to what a similarly situated plaintiff would have received in India."  Id.  Based on these cases, SABIC argues that because the unclean hands defense does not exist under Saudi law, the application of the doctrine would result in a different outcome if the case had been litigated in a Saudi court.  ExxonMobil counters this argument by pointing out that SABIC itself is here seeking equitable relief that it could not obtain under Saudi law, rendering SABIC's argument contradictory.

**FOR PUBLICATION**

Equitable principles such as the doctrine of unclean hands are imposed on litigants not for the benefit of the parties, but for the courts.  It is the integrity of the courts that unclean hands doctrine seeks to protect.  Allowing SABIC to pursue equitable remedies not available to it under Saudi law, but denying ExxonMobil the opportunity to assert equitable defenses because they do not exist under that same law, would be inequitable and contrary to the Court's interest in maintaining its integrity.

2. *Third Circuit Law*

SABIC next argues that, if the law of this circuit governs, the jury's finding does not support a finding of unclean hands as the doctrine is defined in this circuit.  Under Third Circuit precedent, the doctrine of unclean hands applies "when the party seeking relief is guilty of fraud, unconscionable conduct, or bad faith directly related to the matter at issue that injures the other party and affects the balance of equities."  Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 147 n.12 (3d Cir. 1999).

This Court has previously stated that "[t]he unclean hands defense must relate closely to the subject matter of the complaint."  Saudi Basic Indus. Corp., 194 F. Supp. 2d at 391 (citing In re New Valley Corp., 181 F.3d 517, 525 (3d Cir. 1999) ("the alleged inequitable conduct must be connected, i.e. have a relationship to the matters before the court for resolution"), cert. denied, 528 U.S. 1138 (2000)).  The Court decided, in its April 3, 2002 opinion, that this element of an unclean hands defense was adequately satisfied to defeat SABIC's motion to strike the defense:

> [T]his Court finds that there is a close enough relationship between the inequitable conduct and the claims in the lawsuit to give Exxon the opportunity to assert the defense.  SABIC has not met its heavy burden of establishing beyond doubt that, "no relief can be granted under any set of facts that could be proved."

-14-

**FOR PUBLICATION**

> Taj Mahal Travel, 164 F.3d at 189. The Court has already found that the Service
> Agreement and Unipol Agreement are part of the overall Joint Venture
> Agreement.  The allegation by Exxon that SABIC has overcharged the joint
> venture in violation of the Joint Venture Agreement is conduct related to the
> breach of the same Joint Venture Agreement.  SABIC's alleged unclean hands in
> overcharging the joint venture in NJ-II are directly relevant to its effort in NJ-I to
> invoke this Court's equitable powers and enforce obligations supposedly owed by
> Exxon.

Id. at 392.  SABIC argues that these statements were made in resolution of SABIC's motion

under Federal Rule of Civil Procedure 12(c), which governs motions for judgment on the

pleadings.  SABIC contends that because it was an interlocutory order that "does not

conclusively determine anything . . . the district court is free to reconsider it at any time."

Coleman by Lee v. Stanziani, 735 F.2d 118, 120 (3d Cir. 1984).  Although it may reconsider its

earlier finding that the overcharge conduct is directly related to SABIC's claims, the Court is

unpersuaded that a different conclusion is warranted.  The Court now holds that the conduct

underlying the unclean hands defense is directly related to SABIC's claims in this case.

 SABIC additionally argues that the Delaware verdict did not establish its unclean hands

because the beach of contract and usurpation claims at issue demonstrate neither bad faith nor

unconscionable conduct that would justify such a defense.  ExxonMobil, on the other hand,

insists that SABIC's conduct constitutes unconscionable conduct.

In Guadiosi v. Mellon, 269 F.2d 873 (3d Cir. 1959), the Third Circuit adopted Judge

Learned Hand's view of the unclean hands doctrine:

> 'The doctrine (of unclean hands) is confessedly derived from the unwillingness of
> a court, originally and still nominally one of conscience, to give its peculiar relief
> to a suitor who in the very controversy has so conducted himself as to shock the
> moral sensibilities of the judge.  It has nothing to do with the rights or liabilities of
> the parties; indeed the defendant who invokes it need not be damaged, and the

-15-

**FOR PUBLICATION**

court may even raise it sua sponte.'

Id. at 882 (quoting Art Metal Works v. Abraham & Straus, 70 F.2d 641, 646 (2d Cir. 1934)

(Hand, J., dissenting), cert. denied, 293 U.S. 596).  More recently, the Third Circuit has described

the type of conduct that represents unclean hands:  "Accordingly one's misconduct need not

necessarily have been of such a nature as to be punishable as a crime or as to justify legal

proceedings of any character.  Any willful act concerning the cause of action which rightfully can

be said to transgress equitable standards of conduct is sufficient cause for the invocation of the

maxim by the chancellor."  Monsanto Co. v. Rohm & Haas Co., 456 F.2d 592, 598 (3d Cir.

1972) (citing Precision Co. v. Automotive Co., 324 U.S. 806, 814-16 (1945)).  As to what

conduct amounts to an unconscionable act or bad faith, the Third Circuit has suggested in dicta

that negligent acts are insufficient.  See S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 377

n.7 (1992) (stating that neither fraud, unconscionability, or bad faith was alleged and that at best

the plaintiff complains that the defendant was negligent).

     With respect to whether the conduct the jury found SABIC to have engaged in satisfies

the test for unclean hands, the Delaware Superior Court entered a judgment against SABIC for

$416,880,764.  The jury awarded $196,642,656 to ExxonMobil for its 50 percent ownership of

KEMYA, and the total damage to KEMYA was in excess of $393 million.  The royalty

overcharges occurred for over 20 years — throughout the payment period of the Unipol

Agreement between SABIC and KEMYA.  The jury concluded that SABIC — under the theory

of usurpation — wrongfully exercised ownership of the Unipol Process and acted in blatant or

reckless disregard of those property rights.  On the elements of usurpation, the jury was

-16-

**FOR PUBLICATION**

instructed that:  "In order to establish a claim for usurpation, Mobil or Exxon must show, by a

preponderance of the evidence, that SABIC wrongfully exercised ownership or possessory rights

over the property of another without consent, which means with blatant or reckless disregard for

those property rights.  The conduct need not be intentional."  (Del. Litg. Jury Instrucs. at 4.4).

ExxonMobil argues that SABIC acted with the requisite mental state because, to find

SABIC liable for usurpation, the jury had to conclude that SABIC acted "with blatant or reckless

disregard."  SABIC, on the other hand, argues that in order for the unclean hands defense to

come into play, it must have acted willfully in a way that is shocking to the integrity of the court.

SABIC relies heavily on the language in Monsanto to support its assertion that the act must be

willful.  To rebut SABIC's assertion, ExxonMobil emphasizes the wide range of discretion

courts are given in applying the unclean hands doctrine and the Supreme Court's statement that

the doctrine "is not bound by formula or restrained by any limitation that tends to trammel the

free and just exercise of discretion.'"  Precision, 324 U.S. at 815 (quoting Keystone Driller Co. v.

General Excavator Co., 290 U.S. 245, 246 (1933)).

While the Third Circuit has held that conduct must be willful to trigger application of the

unclean hands doctrine and it has intimated that mere negligence is not enough, it has not

commented on whether blatant disregard or recklessness will suffice.  A number of courts have

applied the unclean hands doctrine when the plaintiffs have acted with "blatant disregard," "gross

or reckless disregard," "gross negligence," or "recklessness."  See Pfizer, Inc. v. International

Rectifier Corp., 685 F.2d 357, 359 (9th Cir. 1982) (stating that "wrongfulness, willfulness, bad

faith, or gross negligence" will establish sufficient culpability for invocation of the doctrine of

-17-

**FOR PUBLICATION**

unclean hands); Warner-Jenkinson Co. v. Allied Chemical Corp., 477 F. Supp. 371, 396

(S.D.N.Y. 1979) (the court declined to apply the unclean hands doctrine where a patentee's

failure to disclose some prior art "was not purposeful or designed to mislead nor did it constitute

gross or reckless disregard of its duty of disclosure"); Skehan v. Bd. of Trs. of Bloomsburg State

College, 436 F. Supp. 657, 663-64 (M.D. Pa. 1977) (applying unclean hands doctrine to bar a

professor from being fully reinstated as a faculty member when full reinstatement "after his

blatant disregard for administrative directives would seriously undermine respect for the college

administration . . ., would have the potential of impairing the college's ability to operate its own

affairs and would result in a grave miscarriage of justice"); Xerox Corp. v. Dennison Mfg. Co.,

322 F. Supp. 963, 968 (S.D.N.Y. 1971) (noting that only when a patentee "is guilty of fraud,

willfulness or recklessness indicating a disregard for his duty of frankness should enforcement of

the patent be barred" by the doctrine of unclean hands); Hollifield v. Monte Vista Biblical

Gardens, Inc., 553 S.E.2d 662, 666 (Ga. Ct. App. 2001) (finding that owner of real property who

encroached on adjacent landowners' property to have unclean hands because he "acted with

knowledge that he was building on others' land without permission or reckless disregard of the

truth").

Although the Delaware court did not directly instruct the jury on the meaning of blatant

or reckless, Delaware law defines recklessness in several contexts.  See Koutoufaris v. Dick, 604

A.2d 390, 399 (Del. 1992) (defining recklessness in a personal injury action for assault and

abduction as "when he or she is aware of and consciously disregards a substantial and

unjustifiable risk to the rights or the safety of another"); Jardel Co., Inc. v. Hughes, 523 A.2d

-18-

**FOR PUBLICATION**

518, 530 (Del. 1987) (distinguishing gross negligence from recklessness in the civil context:

gross negligence is "a degree of negligence, while recklessness connotes a different type of

conduct akin to the intentional infliction of harm."); Del. Code Ann. tit. 11, § 231(c) (the

Delaware Criminal Code defines "recklessly" as "when the person is aware of and consciously

disregards a substantial and unjustifiable risk that the element [of the offense] exists or will result

from the conduct.  The risk must be of such a nature and degree that disregard thereof constitutes

a gross deviation from the standard of conduct that a reasonable person would observe in the

situation."); Del. Code Ann. tit. 21, § 4175 (the offense of reckless driving prohibits a person

from driving any vehicle "in wilful or wanton disregard for the safety of persons or property").

Recklessness has also been defined by both this Circuit and New Jersey state law in a number of

contexts to be more than negligence and to include an element of willfulness.  See Cummings v.

City of Philadelphia, 2005 WL 1532431, *2 (3d Cir. June 30, 2005) (defining omissions made

with reckless disregard in the context of an application for a warrant in § 1983 false arrest case as

when "an officer withholds a fact in his ken that any reasonable person would have known that

this was the kind of thing the judge would wish to know"); In re Advanta Corp. Sec. Litig, 180

F.3d 525, 535 (3d Cir. 1999) (defining a reckless statement in the securities fraud context as "a

material misrepresentation or omission 'involving not merely simple, or even inexcusable

negligence, but an extreme departure from the standards of ordinary care, and which presents a

danger of misleading buyers or sellers that is either known to the defendant or is so obvious that

the actor must have been aware of it'"); Cushman v. Trans Union Corp., 115 F.3d 220, 226-27

(3d Cir. 1997) (holding that to justify an award of punitive damages under the Fair Credit

-19-

**FOR PUBLICATION**

Reporting Act, a defendant's actions must be on the same order as willful concealments or

misrepresentations and that the plaintiff could recover punitive damages if she proved that the

defendant "adopted its reinvestigation policy either knowing that policy to be in contravention of

the rights possessed by consumers . . . or in reckless disregard of whether the policy contravened

those rights"); U.S.S.G. § 2A1.4 Cmt. n.1 (distinguishing criminal negligence from recklessness

in the context of involuntary manslaughter and defining reckless as "a situation in which the

defendant was aware of the risk created by his conduct and the risk was of such a nature and

degree that to disregard that risk constituted a gross deviation from the standard of care that a

reasonable person would exercise in such a situation"); N.J.S.A. § 2C:2-2(b)(3) (the New Jersey

Code of Criminal Justice defines recklessness as follows:  "A person acts recklessly . . . when he

consciously disregards a substantial and unjustifiable risk that the material element exists or will

result from his conduct.  The risk must be of such a nature and degree that, considering the nature

and purpose of the actor's conduct and the circumstances known to him, its disregard involves a

gross deviation from the standard of conduct that a reasonable person would observe in the

actor's situation."); Wilson v. Tard, 593 F. Supp. 1091, 1096 (D.N.J. 1984) (court interprets New

Jersey criminal definition of recklessness to mean that "one acts recklessly when he acts

unreasonably and while aware that he is ignoring an obvious danger"); N.J.S.A. § 39:4-96

(reckless driving is defined in New Jersey as "[a] person who drives a vehicle heedlessly, in

willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or be

likely to endanger, a person or property"); Settineri v. PNC Bank Corp., 854 A.2d 922, 927 (N.J.

Super. A.D. 2004) (a defendant can be liable for intentional infliction of emotional distress if

-20-

**FOR PUBLICATION**

"the defendant acts recklessly in deliberate disregard of a high degree of probability that

emotional distress will follow").

Blatant is defined as "1) noisy esp. in a vulgar or offensive manner: loud and clamorous;

2) obtrusive in an offensive manner; (a) conspicuous or enforcing attention in a vulgar manner;

(b) completely or crassly obvious." Webster's Third New International Dictionary Unabridged

(1993).

There is also caselaw to support application of the unclean hands doctrine when a

business partner engages in acts of self-dealing.  In Amadio v. Ingle, 216 F.2d 22, 23 (6th Cir.

1954), the plaintiff sought to impose a constructive trust upon an interest in an oil and gas lease.

The plaintiff alleged that he had been asked by the owner of the lease to secure someone to drill

wells on the land.  The plaintiff testified that he had entered into an agreement with the defendant

for him to do the drilling in exchange for a one-half interest in the lease.  The wells were drilled

and then the plaintiff claimed that he was entitled to 1/6 interest in the lease.  The Sixth Circuit

upheld the district court's finding that the plaintiff had unclean hands and was not entitled to the

relief sought.  The court noted that the plaintiff had unclean hands because he failed to make a

material disclosure to the defendant regarding his interest in the lease and sought to take

advantage of the knowledge he was concealing from the defendant.  The court said that "[t]he

proposed joint adventure between appellant and Ingle imposed upon both parties the obligation

of loyalty to the joint concern and of the utmost good faith, fairness, and honesty in their dealings

with each other with respect to matters pertaining to the enterprise." Id.

The Court is convinced that SABIC's conduct, even though not specifically found to be

**FOR PUBLICATION**

"willful" by the jury, amounts to unconscionable behavior that shocks the integrity of this Court.

Given that other courts have found that actions taken recklessly or in blatant disregard can

amount to unclean hands, the Court is persuaded that the Third Circuit has not limited

application of the doctrine to only those cases involving intentional acts.  The definitions of

recklessness demonstrate that recklessness involves a person voluntarily taking action in

conscious disregard for the risks associated with that act.  To this Court, a person or party who

consciously ignores the obvious risks associated with an action and who performs the act

regardless is acting willfully.  Moreover, although the jury was told that the conduct need not be

intentional to find SABIC liable for usurpation, the jury did not explicitly find that SABIC acted

with or without intent.  By no means does this jury charge mean that usurpation obviates the

presence of intent, only the need to prove it.  Obviously, it cannot be said then that SABIC's

conduct was found to be unintentional.  That SABIC was found to have consciously ignored the

risk that it was overcharging KEMYA in the considerable amount of $393 million and that

SABIC acted with such disregard for over twenty years leaves this Court with no doubt that

SABIC's conduct can be considered, as Judge Learned Hand said, shocking to the moral

sensibilities of the Court, and amounts to unclean hands.

**IV.     The Balance of Equities**

SABIC's final argument is that the balance of equities strongly counsels against

dismissal.  The United States Supreme Court has advised courts not to apply the unclean hands

doctrine without balancing the equities.  Johnson v. Yellow Cab Transit Co., 321 U.S. 383,

387-88 (1944) (courts need not always "permit a defendant wrongdoer to retain the profits of his

<u>**FOR PUBLICATION**</u>

wrongdoing merely because the plaintiff himself is possibly guilty of transgressing the law in the

transactions involved.  The maxim that he who comes into equity must come with clean hands is

not applied by way of punishment for an unclean litigant but upon considerations that make for

the advancement of right and justice."); <u>see also</u> <u>Citizens Financial Group, Inc. v. Citizens Nat.</u>

<u>Bank of Evans City</u>, 383 F.3d 110, 129 (3d Cir. 2004) ("[T]he court must weigh the substance of

the right asserted by the plaintiff against the transgression which, it is contended, serves to

foreclose that right.").  By its Amended Complaint, SABIC seeks to recover for the alleged

misuse of a patent and trade secrets belonging to KEMYA by ExxonMobil.  This claim must be

weighed against SABIC's wrongful conduct of overcharging KEMYA by almost $400 million

over a period of twenty years.

SABIC argues that the balance of equities tilts in SABIC's favor because ECAI, a wholly-

owned subsidiary of ExxonMobil, would never pursue action against ExxonMobil.  The Court

has already determined that SABIC is the only KEMYA partner able to prosecute claims on

behalf of the partnership against ExxonMobil.  <u>Saudi Basic Indus. Corp.</u>, 194 F. Supp. 2d at 398.

SABIC relies on <u>Eaves v. Penn</u>, 587 F.2d 453, 463 (10th Cir. 1978), for the statement that "[t]he

'clean hands' maxim has no play in situations where it would result in substantial harm to

innocent parties."  ExxonMobil answers by noting that SABIC fails to explain why it should be

entrusted with KEMYA's interests when it was SABIC who overcharged the venture for the last

twenty years.

The Court has already said that if SABIC overcharged the joint venture for the use of the

Unipol Process, this conduct "could be considered unconscionable conduct that permeates the

**FOR PUBLICATION**

transaction as a whole" and prevent SABIC from bringing the claims at issue in NJ-I.  Saudi

Basic Indus. Corp., 194 F. Supp. 2d at 392.  SABIC fails to convince the Court that its thoughts

on this issue as articulated in the earlier opinion should be abandoned now.  The Court addressed

this topic in its earlier opinion:

> SABIC's additional argument as to why the unclean hands defense should be stricken is that KEMYA is the real party in interest and the unclean hands defense is against SABIC.  Because the unclean hands defense must relate to the party seeking that equitable relief, SABIC alleges that the unclean hands defense is improper.
>
> Exxon argues that because SABIC is suing on behalf of KEMYA, there are no other partners against whom to assert the unclean hands defense.  Even if KEMYA is innocent, SABIC's unclean hands would prevent it from suing derivatively on KEMYA's behalf.  See Gaudiosi v. Mellon, 269 F.2d 873, 882 (3d Cir. 1959); Recchion v. Kirby, 637 F. Supp. 1309, 1315-16 (W.D.Pa. 1986) (holding that a shareholder with unclean hands cannot sue derivatively).
>
> If SABIC as a derivative shareholder suing on behalf of KEMYA is found to have unclean hands, the Court finds that this wrongful conduct would bar SABIC from bringing the claims at issue.  This view is well-established in case law.  Recchion applied the doctrine of unclean hands to prevent plaintiff shareholder in a derivative action from complaining about the very conduct which he facilitated.  The close connection between the plaintiff's own wrongful conduct and the wrongful conduct which was the basis of the derivative suit allowed the unclean hands defense to go forward.  Id. at 1315-16. Similarly, in Gaudiosi, in a derivative action for equitable relief related to a disputed proxy contest, the wrongful conduct of one of the contestants in intimidating the other stockholders abstain from voting their shares allowed an unclean hands defense.  Gaudiosi, 269 F.2d at 882.

Saudi Basic Indus. Corp., 194 F. Supp. 2d at 392.  While not bound by its earlier opinion, the

Court's references to Gaudiosi and Recchion remain valid.

SABIC also argues that ExxonMobil should not be rewarded because it "won a race to

judgment."  It claims that it would be grossly unjust to reward a guilty party because it obtained a

judgment before SABIC could pursue its claims in this Court.  This argument is without merit:  it

-24-

**FOR PUBLICATION**

was SABIC, not ExxonMobil, who filed the action in Delaware.  To claim that ExxonMobil won

a race to judgment is contrary to the procedural background of this controversy.

SABIC's final effort to swing the equities in its favor is to point out that it paid the

Delaware judgment, thus righting the wrong.  SABIC claims that to dismiss its case against

ExxonMobil would inequitably overcompensate ExxonMobil and overpenalize SABIC.  That

SABIC has paid the judgment, however, does not persuade the Court that the equities swing in its

favor.  As said earlier, payment of the judgment does not purge SABIC of its unclean hands, nor

does it tip the equities in favor of allowing it to pursue its claims against ExxonMobil in a court

of equity.

## CONCLUSION

Under the doctrine of collateral estoppel, "once an issue is actually and necessarily

determined by a court of competent jurisdiction, that determination is conclusive in subsequent

suits based on a different cause of action involving a party to the prior litigation."  Hercules Inc.

v. AIU Ins. Co., 783 A.2d 1275, 1278 (Del. 2000) (citing Montana v. United States, 440 U.S.

147, 153 (1979).  Here, the four elements of collateral estoppel are satisfied:  1) the issue decided

in the Delaware litigation, the propriety of the royalty charges, is also the conduct that is the

subject of ExxonMobil's unclean hands defense; 2) the Delaware litigation has been finally

adjudicated and affirmed by the Delaware Supreme Court; 3) the party against whom the doctrine

is invoked, SABIC, was a party to the Delaware litigation; and 4) SABIC had "a full and fair

opportunity to litigate" the royalty issue before the Delaware courts.  As discussed, none of the

arguments raised by SABIC in opposition to the motion persuade the Court that the doctrine of

**FOR PUBLICATION**

unclean hands should not be applied here.  SABIC has engaged in unconscionable conduct

directly related to the matter at issue that has injured ExxonMobil and affected the balance of

equities.  ExxonMobil's motion to dismiss the Amended Complaint is granted.  The Amended

Complaint is dismissed with prejudice.


<u>**s/William H. Walls**</u>
United States District Judge

-26-

**FOR PUBLICATION**

**Appearances**

Jeffrey W. Lorrell
Marc C. Singer
SAIBER SCHLESINGER SATZ & GOLDSTEIN, LLC
One Gateway Center, 13th Floor
Newark, NJ 07102

Kenneth R. Adamo
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114

Gregory A. Catanias
Lawrence D. Rosenberg
Willliam K. Shirley II
Esther Slater McDonald
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC 20001
          Attorneys for Plaintiff Saudi Basic Industries Corporation

Elizabeth J. Sher
PITNEY HARDIN LLP
P.O. Box 1945
Morristown, NJ 07962

James W. Quinn
David Lender
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153

Andrew S. Pollis
David J. Michalski
HAHN LOESER + PARKS
3300 BP Tower
200 Public Square
Cleveland, OH 44114

**FOR PUBLICATION**

Kenneth C. Johnson
EXXON MOBIL CORPORATION
CORP-EMB-15581
800 Bell Street
Houston, TX 77002
          Attorneys for Defendant Exxon Mobil Corporation